FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ MAY 1 7 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------- X
RUBEN VILLACRESES,

               Petitioner,

   -against-

ISRAEL RIVERA, Superintendent,

               Respondent.

------------------------------------------------- X

MEMORANDUM
DECISION AND ORDER

06-CV-1733 (BMC) (RLM)

**COGAN**, District Judge.

In this *habeas corpus* petition pursuant to 28 U.S.C. § 2254, petitioner asserts two grounds for relief: (1) ineffective assistance of counsel at pretrial proceedings and trial; and (2) violation of due process by use of an unduly suggestive line-up. I find both claims to be without merit and therefore dismiss the petition.

## BACKGROUND

Petitioner's conviction arises out of a gas station robbery in Queens. An eyewitness, Jozef Soltys, observed petitioner and an associate fleeing from the scene and speeding away in a white van. Soltys and the storeowner, the latter of whom only saw the perpetrators with masks on in the store, spoke to the police at the scene immediately after the robbery. Soltys gave police a description of the petitioner and a partial license plate number of the van. The police located the van, which had been reported stolen, and from there, used a bloodhound working off a scent in the van to lead them to petitioner's apartment, where he was arrested. Soltys picked petitioner out of a lineup the next day.

Petitioner was acquitted of two felony counts of criminal possession of stolen property, and convicted of first and second degree robbery and unauthorized use of a vehicle. He was sentenced to concurrent terms for each with the longest term, for first degree robbery, of ten years.

## DISCUSSION

### I. Ineffective Assistance of Counsel

The state courts determined petitioner's ineffective assistance claim on the merits, rejecting it three times in slightly different permutations: on direct appeal; on a motion to set aside the verdict (N.Y.C.P.L. § 330.30); and on a motion to vacate the conviction (N.Y.C.P.L. § 440.10). To obtain *habeas corpus* relief, petitioner is therefore required to show that the rejection of his claim in state court was either contrary to, or an unreasonable application of, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). 28 U.S.C. § 2254(d)(1). Under Strickland, in turn, petitioner must prove that the way his counsel handled the case "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." Id. at 686, 104 S.Ct. at 2064. Petitioner must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068.

I will proceed below to discuss the errors that petitioner attributes to his trial counsel. I note at the outset, however, that none of these alleged errors, either singly or collectively, meets the exacting standard of Strickland. Instead, petitioner mostly relies on highly technical errors, non-errors, and "near-errors," i.e., mistakes he claims that his counsel might have made but which the trial court prevented.

2

Few if any trials are perfect and this one certainly was not, but my review of the pretrial and trial record shows that defense counsel performed adequately on this case and it was no accident that he obtained acquittals on two out of the five felony charges. He scored points against several witnesses he examined in pursuit of his mistaken identification defense, and he was aggressive in defending petitioner throughout. While there were shortcomings in counsel's performance, the trial boiled down to the jury accepting Soltys' testimony over the contradictory testimony of petitioner and his alibi witnesses, and the totality of the circumstances were not such that counsel's alleged errors affected the result. Under these circumstances, the decisions of the state courts did not constitute an unreasonable application of Strickland.

**A. The Bloodhound**

Petitioner's primary complaint against his former counsel is that he was ignorant of the foundational requirements under New York State law for the admission of bloodhound evidence, and that he failed to request the limiting instruction that state law allegedly requires upon introduction of such evidence. There is no issue that trial counsel was indeed unaware of the state caselaw on this issue; he volunteered an affidavit in petitioner's post-conviction proceedings so stating. According to petitioner, the error was particularly severe because the prosecutor stressed the olfactory acumen of the bloodhound, Kojak, in closing argument.

New York law, however, is not the monolith that petitioner describes. There is no New York Court of Appeals case that sets forth the criteria for the admission of bloodhound evidence, and the primary authority of which he claims trial counsel should have been aware is a County Court case from 1969, People v. Centolella, 61 Misc.2d 723,

3

305 N.Y.S.2d 460 (Oneida Co. Ct. 1969). That case did not, and as a *nisi prius* case could not, set forth a mandatory test for the introduction of such evidence that would be binding on New York courts; all it did was set forth a list of factors gleaned from jurisdictions across the country and held that the record before it satisfied all of the various foundational factors that other courts had considered. The prosecutor's satisfaction of each of these different factors in Centolella made it a simple decision on that score; the decision did not, however, engrave in New York bedrock a "super-foundation" rule consisting of the aggregation of every single criteria that every court had considered as of 1969.[1]

Petitioner attempts to oversell the Court of Appeals' decision in People v. Carracedo, 89 N.Y.2d 1059, 659 N.Y.S.2d 830 (1977), as holding that "the jury must be given a strongly-worded cautionary instruction" stating that bloodhound evidence must be viewed "with utmost caution" and that it has "slight probative value." Carracedo requires no such instruction. It simply found that where the dog handler-officer had lost his notes concerning the tracking, that type of instruction was an adequate substitute for a Rosario "missing evidence" instruction.

There is no doubt that New York law will not let a jury blithely assume that because a dog allegedly followed a scent from point A to point B, the location of defendant at point B is an indicator of guilt. A foundational showing is required, and the

---

[1] There are two Fourth Department decisions, at least (as well as a handful of decisions in other states), that have cited Centolella with approval, but the cite in each of these is merely a passing reference in summarily rejecting a challenge to bloodhound evidence on the record before that court, which record is not described. See People v. Wilder, 186 A.D.2d 1069, 590 N.Y.S.2d 809 (4th Dep't 1992); People v. Muggleberg, 132 A.D.2d 988, 518 N.Y.S.2d 285 (4th Dep't 1987). Neither case espouses the imposition of the inflexible standard that petitioner advances.

4

County Court's decision in Centolella provides a useful guidepost for factors that a court might consider in determining whether the prosecutor has made that showing. But the admission of such evidence remains in the discretion of the trial judge,[2] and defense counsel cannot be faulted under Strickland for failing to object unless, at the very least, it is reasonably probable that the objection would have been sustained and the failure to make it affected the outcome of the trial.

Here, the foundation for the admission of the bloodhound evidence at petitioner's trial was solid. The prosecution called a Sergeant Cincotta as an expert in the field of bloodhound training and scent trailing. He was the former head trainer for the New York Police Department's K-9 unit. Just as importantly, he trained both Kojak and Kojak's handler, an Officer Chandless (who had retired since petitioner's arrest and moved out of state, and thus did not testify). His testimony fully established Kojak's pedigree (one of the Centolella tests) by expressing detailed knowledge of Kojak's breeder, as well as the dog's parents, both of whom had been man-trackers. He described for the jury the year-long training to which he had subjected Kojak (another Centolella test) and the testing and certification process that this dog and other trackers are required to undertake. He explained generally the success percentage of dogs in these cases, and he also described what kind of weather conditions are good or bad for tracking, concluding by saying that a hot, still humid night, like the one on which Kojak found petitioner's apartment, was ideal for maintaining and following a specific scent. As to Kojak particularly, he described him as a fast learner, methodical, and good at giving readable signs upon

---

[2] Even petitioner appears to implicitly recognize this. He footnotes People v. Abdullah, 134 A.D.2d 503, 521 N.Y.S.2d 286 (2d Dep't 1987), which found no error despite the prosecution's failure to elicit canine pedigree – one of the Centolella tests. His attempt to distinguish it does not alter the principle that the extent of the required foundation remains a matter committed to the trial court's discretion.

5

finding a track or going off of one. He ranked Kojak as "very good," and stated that he was unaware of ever having a problem with the dog. He noted that Kojak remained an active member of the K-9 Unit at the time of trial.

Despite the adequacy of the foundation, petitioner's counsel aggressively challenged it. It is obvious that he did factual research on police trailing dogs before trial. He brought out that Sgt. Cincotta had never heard of the "National Bloodhound Training Institute." He made the officer admit that the NYPD does not conduct "bloodhound lineups" as some other jurisdictions do. He raised the specter that Kojak may have been attracted to a female pit bull in petitioner's apartment, and then later had petitioner testify that he in fact owned a female pit bull. He brought out on cross-examination that the officers had failed to check whether any surrounding apartments contained a female dog, again suggesting that basic instinct drew Kojak to petitioner's apartment. He got Sgt. Cincotta to admit that he would have done a more thorough job in documenting Kojak's path that night than did his dog handler, Officer Chandless, a point that had some significant potential since Kojak's path to petitioner was convoluted.

In addition, defense counsel, upon completion of the testimony concerning the bloodhound evidence from Det. Beutel and Sgt. Cincotta, sought to strike Det. Beutel's testimony based on similar foundational shortcomings to those he urges here were mandatory under <u>Centolella</u>. Specifically, defense counsel argued that Det. Beutel was not the dog handler and the prosecution had not called Officer Chandless, who had accompanied Kojak on the trail to petitioner's apartment. The Court overruled that objection, but defense counsel did not abandon the point. Right before submission of the

case to the jury, defense counsel requested a missing witness charge because Officer Chandless was not called. The Court rejected that as well.

This is not ineffective assistance, whether or not counsel knew of a 35 year-old County Court decision. The foundation was sufficient for the introduction of the bloodhound evidence. Counsel took several appropriate steps to protest the absence of the dog's handler, arguing that the handler was necessary to lay a proper foundation. Under these circumstances, I cannot conclude that the state courts unreasonably applied Strickland in reaching the conclusion that defense counsel provided effective assistance.

**B. Missing Rosario Material**

Petitioner's second point of error stems from his trial counsel's failure to request an adverse inference instruction concerning handwritten police interview notes that were transcribed onto a police report and then lost. Under People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961), and later modified and codified at N.Y.C.P.L. §§ 240.44, 240.45, the prosecution is required to turn over any pretrial statements of witnesses that it is going to call at trial. If the statements are inadvertently lost, then the defendant is entitled to an adverse inference instruction – but only if he can show prejudice as a result of the missing statements. If the defendant is prejudiced, it is within the discretion of the trial judge to determine what curative action to take, but an adverse inference instruction seems to be the minimum curative step that the court must take if it finds prejudice.

In the present case, the police officer involved, Detective Beutel, testified at the pretrial hearing that he interviewed both the storeowner and Soltys and made notes of their statements. He then transcribed the statements onto his police report, known as a DD-5, as soon as he returned to the stationhouse, but the memopad containing the notes

7

was either lost or misplaced after that. Both Soltys and the storeowner testified at trial, although only Soltys could identify petitioner.

Petitioner recognizes that Rosario violations, which are solely matters of state law, are not reviewable on *habeas corpus*, see King v. Greene, No. 03 CV 3743, 2006 WL 1764379, *5 (E.D.N.Y. 2006), and thus he is not petitioning for a writ based on the prosecutor's failure to comply with state law. Of course, some violations of state law may also constitute deprivation of due process, and that is theoretically possible with regard to a Rosario violation. See Brown v. McKinney, 358 F.Supp.2d 161, 171-72 (E.D.N.Y. 2005). Petitioner, however, has not raised a due process claim either. Instead, he is claiming a Sixth Amendment violation because of his counsel's failure to invoke his state law rights and seek a curative instruction. It is important to recognize that the issue before me is not whether petitioner was deprived of a fair trial because of the disappearance of the memopad; it is only whether he was prejudiced by his counsel's failure to request a curative instruction.

Petitioner has satisfactorily demonstrated that his trial counsel made a mistake in not at least asking for this instruction. Respondent has identified no strategic reason why trial counsel would not have asked for such an instruction and I cannot see any. Indeed, such an instruction would have fit well with defense counsel's strategy of attacking Soltys' identification of petitioner.

However, I have no basis to find that the trial judge would have given such an instruction. To do so, he would have to have found that petitioner was prejudiced by the missing memopad. Yet the officer testified that he transcribed all of his interview notes directly onto the DD-5 as soon as he returned to the station, prior to petitioner's arrest.

8

The record is devoid of any evidence that the Detective altered Soltys' description, which he wrote on his memopad, between the time that he took the notes and transcribed them onto the DD-5.

Even assuming that the trial judge would have given such an instruction if asked, it is yet a larger leap to conclude that but for the failure to include the instruction, petitioner would have been acquitted, as <u>Strickland</u> requires. Nor do I see the failure to request the instruction as fundamentally undermining the adversarial process, the other <u>Strickland</u> requirement. This is because the point of the instruction – that Soltys' identification had changed and was not reliable – was thoroughly explored on the record. Petitioner's trial counsel examined Detective Beutel about misplacing the notebook and thereby suggested that Soltzy's identification could not be relied upon. He called another police officer, Officer Zacarese, who had also made notes at the scene from the same witnesses, and established that Officer Zacarese's notes had some arguably significant differences from Soltys' trial testimony. Finally, at closing, defense counsel emphasized the differences in the identification.

An instruction would have said, in effect: "You may draw an adverse inference from the fact that the prosecution did not offer Detective Beutel's notes that such notes would have been harmful to the prosecution's case, although you are not required to draw such an inference." Although petitioner's argument is colorable, I do not believe that inserting this charge in the 30 transcribed pages of instructions that the jury heard would have altered the result it reached. The fundamental issue in his case, as the trial judge bluntly put it to the jury, was whether they accepted Soltys' identification. The absence of Det. Beutel's notes was one fact that defense counsel used aggressively to question the

identification, but he had a number of stronger points on that issue that he also raised. I cannot find that the state courts unreasonably applied Strickland in concluding that petitioner was not prejudiced by his counsel's failure to request an instruction concerning the missing notes.

**C. Wade hearing errors**

Petitioner's critique of his counsel's efforts at his pretrial Wade hearing raises insubstantial points.

First, petitioner's counsel elicited at the Wade hearing that Det. Beutel had lost his memopad. Petitioner now claims ineffective assistance because his counsel did not request a sanction for the missing memopad at that time. It is unclear what sanction petitioner thinks his counsel should have requested. He was already seeking suppression of Soltys' lineup identification, and the hearing court denied that. He might have sought to preclude introduction of Det. Beutel's DD-5 containing the transcribed Soltys' identification information, but Det. Beutel did not offer that at trial, nor did he offer the identification itself. Moreover, Soltys did not testify at the Wade hearing, so it was not as if petitioner was prejudiced by the inability to compare the missing notes with any testimony that the witness might have given.

In sum, having uncovered this information at the Wade hearing, defense counsel chose to use it aggressively at trial to question the integrity of the investigation and the accuracy of Soltys' identification. Petitioner's claim that he was denied effective assistance at the Wade hearing satisfies neither of the Strickland requirements.

Petitioner's remaining complaint about his counsel's conduct of the Wade hearing is that he did not examine Det. Beutel with sufficient vigor. Petitioner offers only two illustrations in support of this contention. First, the prosecution brought out at trial, but defense counsel failed to bring out at the Wade hearing, that when Soltys came to the stationhouse to view the lineup, Soltys saw the white van, which he knew had been used in the robbery, parked outside of the stationhouse. Although petitioner's argument is not well developed, he apparently is contending that once Soltys saw the van, he was more likely to conclude that the perpetrator was actually in the lineup – even though the fact of the matter was that the police had seized the van and its presence there had nothing to do with petitioner being in the lineup. Second, defense counsel failed to point out to the hearing judge the height discrepancy between petitioner and the fillers in the lineup.

Petitioner's claim concerning the Wade hearing is without merit. As to the first, the Sixth Amendment does not require counsel to uncover every fact in cross-examination that arguably might be useful to a defendant. More importantly, Soltys' knowledge that the police had found the van in no way tainted the lineup. As to the second, the height discrepancy about which petitioner is complaining is two inches, and it was minimized by having all the lineup participants remain seated while Soltys looked at them. In short, I find no constitutional error in counsel's performance at the Wade hearing.[3]

---

[3] Petitioner sets forth a "catch-all" brief point on other alleged errors, including failure to properly lay foundations for pieces of evidence that counsel might have admitted, making statements that led the court to convene sidebars, approaching (but not actually making) statements that might have opened the door for the prosecution to offer evidence of other bad conduct, and making a statement in closing argument that allegedly shifted the burden to the defense. I find all of these points to be without merit.

11

## II. Suggestive Lineup

Petitioner's only complaints about the lineup are relative height and skin tone of the participants compared to petitioner.

As to height, petitioner was the tallest, but only by two inches. Petitioner was 6 feet tall, three participants were 5 feet 10 inches, and two were 5 feet 6 inches. This slight height discrepancy was minimized by having all of the participants sit. There is nothing unconstitutional about this height array.

Petitioner further contends that that the fillers were darker skinned Hispanics than he was and he therefore stood out. It does not appear that way to me from the picture of the lineup, but I recognize that skin tone cannot reliably be compared in a color photocopy of a photograph. However, the hearing judge also concluded that all but one of the fillers were of approximately the same skin tone as petitioner.

The Supreme Court has found lineups to be impermissibly suggestive only under extreme circumstances not present in this case. See Foster v. California, 394 U.S. 440, 443 (1969) (holding that identification procedures were inherently suggestive where police first arranged a lineup in which "petitioner stood out from the other two men by the contrast of his height and by the fact that he was wearing a leather jacket similar to that worn by the robber"; then, when the first lineup did not produce a positive identification, arranged a showup that produced a tentative identification; and finally arranged another lineup in which petitioner was the only person who had also participated in the first lineup). I do not find such extreme circumstances here.

12

Moreover, Soltys' identification of petitioner was independently reliable under the factors set forth in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375 (1972), and Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243 (1977). Soltys looked directly at petitioner from a short distance as petitioner fled the crime scene, and identified him the very next day. Under these circumstances, the state courts' rejection of his claim was not contrary to or an unreasonable application of the Supreme Court's decisions on lineup identifications.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because petitioner has identified an actual error by trial counsel by failing to request a Rosario instruction, and the Strickland test requires a review of defense counsel's conduct under the totality of the circumstances, a certificate of appealability shall issue under 28 U.S.C. § 2253. The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

/S/
_____
U.S.D.J.

Dated: Brooklyn, New York
       May 11, 2007